**Robert W. BETTS, II, Plaintiff,**

v.

**RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, Defendants.**

No. Civ.A. 3:96–00054.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Sept. 11, 2000.

Dexter Brock Green, Jones & Green, Charlottesville, VA, for Robert W. Betts, II, plaintiff.

Richard Croswell Kast, University of Virginia, Office of the General Counsel, Charlottesville, VA, for Rector and Visitors of the University of Virginia, defendant.

### MEMORANDUM OPINION

WILSON, Chief Judge.

This is a suit for declaratory and injunctive relief by Plaintiff, Robert W. Betts, II, ("Betts"), against Defendants, Rector and Visitors of the University of Virginia (the "University"), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; 42 U.S.C. § 1983; and Virginia contract law; for being denied admission to the University's medical school. This court previously granted summary judgment to the University and dismissed all of Betts' claims. The Fourth Circuit affirmed this court's granting of summary judgment as to the § 1983 and state law claims, but reversed as to Betts' ADA and Rehabilitation Act claims and remanded for a determination of whether Betts is "disabled" under the ADA. This court has jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 794(a), and 42 U.S.C. §§ 12133, 2000e–5. This matter is before the court on the University's renewed motion for summary judgment, asserting that Betts is not "disabled" under the ADA; and Betts' renewed motion for summary judgment, which focuses on the same issue, and alternatively asserts that the court should disallow further argument as to whether Betts is disabled because the University previously conceded this issue. Finding that Betts is not "disabled" under the ADA and that the University's previous treatment of this issue does not prevent the court from considering it, the court will accordingly grant the University's renewed motion for summary judgment and deny Betts' renewed motion for summary judgment.

### I.

Robert W. Betts, II, is a 1994 graduate of North Carolina Wesleyan College, where he majored in both Biology and Chemistry. Following college, he was accepted into the University of Virginia's School of Medicine pursuant to the Medical Academic Advancement Post–Baccalaureate Program ("MAAP"), designed for economically disadvantaged and minority students. MAAP guaranteed admission to the University's medical school to selected applicants who, *inter alia,* completed the program and maintained a minimum GPA of 2.75 per semester, received no grade below a C, and met the requirement of satisfactory performance to be judged by a faculty committee. (Pl.'s Compl., Exhibit 2.) Betts began the program in the summer of 1995 and continued through the fall semester. However, he failed to meet the minimum requirements; he achieved only a 2.223 GPA and received a D in physics. Nonetheless, the faculty committee decided to permit Betts to proceed under a modified set of requirements. The faculty committee notified Betts that if he accepted tutoring and submitted to testing for a learning disability, he would be permitted to continue, pending reevaluation of his performance by the faculty committee at the end of the academic year. (Pl.'s Compl., Exhibit 4.)

Betts agreed to these terms and was examined by the University Learning Needs and Evaluation Center ("LNEC"). The LNEC issued a preliminary letter to Betts' professors on April 12, 1996, stating that Betts had "difficulties with short-term memory [and] reading speed." It recommended that Betts be given double time for all examinations. (Pl.'s Compl., Exhibit 6.) An official report that followed on June 27, 1996, did not diagnose Betts with a specific learning disability, but found that he "had high average verbal conceptual skills and average intellectual ability," but showed "significant weaknesses in particular patterns of abilities." LNEC concluded that Betts lacked "ade-

quate strategies when information exceed[ed] the storage capacity of his short term memory," and that he "demonstrated a pattern of uneven cognitive processing skills consistent with a mild learning disability." LNEC again recommended that Betts receive double time for all exams. (Def.'s Renewed Mot.Summ.J., Exhibit 5.)

Betts subsequently obtained an independent evaluation by Dr. Robert L. Muller, a licensed clinical psychologist. Dr. Muller administered the Wechsler Adult Intelligence Scale (WAIS–R) test and found that Betts has a learning disability. However, the test results also showed that Betts' I.Q. is in the superior range (96th percentile). (*Id.*, Exhibit 6.)

Upon receiving the April 12, 1996, letter from the LNEC, the University immediately doubled the allotted time Betts was previously permitted on exams, and he took five exams with the enlarged time. On these five exams, Betts received grades in the A or B range. In the spring semester, however, Betts achieved only a 2.838 GPA, which gave him a cumulative GPA of 2.531 for the year. The other MAAP participants attained GPAs of 4.0, 3.4, 3.3, 3.5, 3.6, and 4.0 for the spring and 3.9, 3.5, 3.2, 3.6, 3.6, and 3.8 for the year. On May 28, 1996, the faculty committee met, decided that Betts had failed to demonstrate that he was prepared to enter medical school, and rescinded his offer of admission. Betts was informed that his "failure to meet the overall GPA standard of 2.75 for the academic year" was the reason for the decision of the faculty committee to rescind its offer of admission. (Pl.'s Compl., Exhibit 7.) Betts appealed to the Dean of the Medical School Robert M. Carey, who notified Betts on June 10, 1996, that he would uphold the faculty committee's decision. Betts, with his counsel, was given an additional opportunity to appear before Dean Carey, the Admissions Director Beth A. Bailey, and Associate Dean for Admissions Benjamin C. Sturgill. During that August 6, 1996, meeting, Betts was offered yet another chance to enter into the Medical School, albeit not before the fall of 1997, on newly revised terms.[1] Instead of accepting the offer, Betts filed this lawsuit on August 9, 1996, seeking declaratory relief that the University violated the ADA, the Rehabilitation Act, and the Due Process Clause, and that the University breached its contract with Betts. Betts also sought injunctive relief, requiring defendants to immediately reinstate Betts into the 1996–97 Medical School class and requiring the University to reinstate Betts' financial aid, which he received as a MAAP participant. Finally, Betts asked for costs and attorney's fees pursuant to the ADA, the Rehabilitation Act, and 42 U.S.C. § 1988. The motion for injunctive relief was denied on August 16, 1996.

After discovery and the filing of an amended complaint by Betts, both parties filed cross-motions for summary judgment. For purposes of these summary judgment motions, the University did not contest the issue of whether Betts has a "disability," as defined by the ADA. Instead, the dispositive issue on the ADA and Rehabilitation Act claims was whether Betts "is an otherwise qualified individual" under the ADA. On May 27, 1997, Senior District Judge James H. Michael, Jr., issued a Memorandum Opinion and Order granting the University's motion for summary judgment, and denying Betts' cross-motion. In ruling on Bett's ADA and Rehabilitation Act claims, the court found that Betts was not a "qualified individual" because he was not able to meet the academic standards required for admission to the School of Medicine. In ruling on his procedural and

---

1. Pursuant to the terms of the new offer, Betts would be required to (1) take an additional 12 credits of course work, in which the University offered to support any request Betts made for double time; (2) retake the Medical College Aptitude Test ("MCAT") (again, using double the time allotted non-disabled students if possible); and (3) attain a GPA of 3.25 or better, receive no grade lower than C, and achieve an average score of 8 on the MCAT, with no individual score falling below 7.

substantive due process claims, the court found that the University's decision was neither arbitrary nor capricious. Finally, in rejecting Betts' breach of contract claim, the court held that the alleged contract between the parties gave the University the sole discretion to determine whether Betts was prepared for the School of Medicine.

On June 25, 1997, Betts filed a Notice of Appeal with the court. After briefing and oral argument, the Fourth Circuit issued its opinion on September 22, 1999. *See Betts v. Rector and Visitors of the University of Virginia,* No. 97–1850, 1999 WL 739415 (4th Cir. Sept.22, 1999) (unpublished opinion). The Fourth Circuit affirmed the district court's rulings on Betts' due process and state contract claims, but reversed and remanded the court's rulings with regard to the ADA and Rehabilitation Act claims. The Court of Appeals held that Betts is a "qualified individual" because he is able, with accommodation, to meet the essential requirements for admission to the School of Medicine. However, the Fourth Circuit found that Betts had not yet made out a prima facie case of discrimination, because the district court "assumed, without deciding, that Betts was disabled." *Id.* at *7. Therefore, on remand, this court must determine "whether Betts is disabled for purposes of the ADA." *Id.*

After a status conference on December 7, 1999, the court issued an order instructing the parties to brief the following issues: (1) Whether the University previously conceded that the plaintiff is disabled under the ADA; and (2) whether Betts qualifies as disabled under the definitions set forth by the ADA in 42 U.S.C.

§ 12102(2)(A)–(C). (Order dated January 21, 2000.) Betts filed a renewed motion for summary judgment on March 23, 2000, asserting that the University conceded the disability issue in prior proceedings and that, even if the University did not concede the issue, Betts is disabled under 42 U.S.C. § 12102(2)(A) and (C).[2] The University responded on April 24, 2000, by filing a renewed motion for summary judgment, addressing the same issues. On April 26, 2000, Judge Michael transferred the case to Chief District Judge Samuel G. Wilson, who conducted a hearing on the motions on May 26, 2000.

## II.

■ Betts asserts that he is disabled and was denied admission to the University's medical school based on that disability, in violation of the ADA and the Rehabilitation Act.[3] The ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, in order to establish a prima facie case under the ADA, Betts must prove that (1) he has a disability; (2) he is an otherwise qualified individual; and (3) he was denied a benefit solely because of his disability. *See Doe v. University of Maryland Med. Sys. Corp.,* 50 F.3d 1261, 1264–65 (4th Cir.1995); *see also Martinson v. Kinney Shoe Corp.,* 104 F.3d 683, 686 (4th Cir. 1997); *Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 348 (4th Cir. 1996), *cert. denied,* 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997). The

**2.** Betts declines to assert that he is disabled under 42 U.S.C. § 12102(2)(B), recognizing that "it would be difficult for him to show 'a record' of his specific learning disability as required by the case law." (Pl.'s Memo.Supp. Renewed Mot.Summ.J. at 3 n. 1.)

**3.** Because Congress has directed that Title II of the ADA be interpreted in a manner consistent with § 504 of the Rehabilitation Act, *see*

42 U.S.C. §§ 12134(b), 12201(a), the analysis of Betts' ADA and Rehabilitation Act claims are combined, *see Shafer v. Preston Mem'l Hosp.,* 107 F.3d 274, 276 n. 3 (4th Cir.1997); *Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1264 n. 9 (4th Cir.1995); *Tyndall v. National Educ. Ctrs., Inc.,* 31 F.3d 209, 213 n. 1 (4th Cir.1994).

Fourth Circuit held that Betts is a "qualified individual"; thus, the remaining questions are whether Betts is "disabled" under the ADA and, if so, whether he was denied admission to the medical school solely because of his disability.

Under the ADA, a "disability" is defined as follows: "with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Id. § 12102(2). Betts claims that he is disabled under 42 U.S.C. § 12102(2)(A) and (C), but declines to argue that he is disabled under 42 U.S.C. § 12102(2)(B). Because the court finds that Betts' learning disability is not a "disability" as defined by § 12102(2)(A), the mere fact that he has a history or record of a learning disability "adds no grist to the mill." Pacella v. Tufts Univ. Sch. of Dental Med., 66 F.Supp.2d 234, 239 n. 9 (D.Mass.1999). Therefore, the court need only consider the disability issue under § 12102(2)(A) and (C).

### A.

■ Under 42 U.S.C. § 12102(2)(A), an individual is considered disabled if the individual has a "physical or mental impairment that substantially limits one or more of the major life activities of such

individual." Applicable "physical or mental impairments" include "specific learning disabilities."[4] 28 C.F.R. § 35.104.[5] The evidence indicates that Betts does have a specific learning disability, and the University does not contest this.

However, this does not end the analysis; the court must also determine whether Betts' learning disability "substantially limits one or more of [his] major life activities." 42 U.S.C. § 12102(2)(A). The phrase "major life activities" is defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 35.104 (emphasis added).

■ Although learning is a "major life activity," attending medical school is not. In Pacella v. Tufts University School of Dental Medicine, 66 F.Supp.2d 234 (D.Mass.1999), the court found that attending dental school is not a major life activity, noting that " '[a]n impairment that interferes with an individual's ability to perform a particular function, but does not significantly decrease that individual's ability to obtain a satisfactory education otherwise, does not substantially limit the major life activity of learning.' " Id. at 239 (quoting Knapp v. Northwestern Univ., 101 F.3d 473, 481 (7th Cir.1996)). The court concluded that the " 'inability to pur-

4. The phrase "specific learning disabilities" is not further defined in the ADA or its regulations, but the Individuals with Disabilities Education Act defines that term as follows:

The term "specific learning disability" means a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, which disorder may manifest itself in imperfect ability to listen, think, speak, read, write, spell, or do mathematical calculations.

. . . Such term includes such conditions as perceptual disabilities, brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia.

. . . Such term does not include a learning problem that is primarily the result of visual, hearing, or motor disabilities, of

mental retardation, of emotional disturbance, or of environmental, cultural, or economic disadvantage.

20 U.S.C. § 1401(26).

5. Section 12134 of the ADA authorizes the Attorney General to promulgate regulations with regard to §§ 12131–33, but the ADA does not authorize any government agency to promulgate regulations implementing the generally applicable sections of the ADA, §§ 12101–02, which include the definition of "disabled." See 42 U.S.C. § 12134. Nevertheless, these regulations are not disputed by the parties and are helpful in a determination of whether Betts is disabled. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139, 2144–46, 144 L.Ed.2d 450 (1999) (the Court considered the regulations without deciding what deference they are due).

sue one career, such as [dentistry], does not constitute a severe impact on an individual's life.'" *Id.* (quoting *McGuinness v. University of N.M. Sch. of Med.,* 170 F.3d 974, 979 (10th Cir.1998)). *Cf. Runnebaum v. NationsBank,* 123 F.3d 156, 170 (4th Cir.1997) (en banc) (providing that "an activity qualifies under the statutory definition as one of the major life activities contemplated by the ADA if it is relatively more significant or important than other life activities"), *overruled on other grounds by Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). Thus, whether Betts' disability limits his ability to attend medical school is immaterial; instead, he must show that his learning disability substantially limits his ability to *learn.*

◼ The ADA does not define "substantially limits," but courts recognize that "the impairment must be significant." *Runnebaum,* 123 F.3d at 167. Furthermore, the EEOC has defined the term for purposes of Title I of the ADA as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Thus, in order for Betts to establish that he is disabled for purposes of the ADA, he must show that his learning disability restricts his ability to learn in comparison to the average person in the general population.[6]

◼ In making such a determination, the court takes into account Betts' ability to mitigate, or successfully cope with, the effects of his learning disability. "[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2146, 144 L.Ed.2d 450 (1999). Such measures could include either artificial aids such as medications and devices, or even measures taken by the body's own systems, whether taken consciously or subconsciously. *See Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 2169, 144 L.Ed.2d 518 (1999).

The record shows that Betts has a history of scholastic success in spite of his learning disability. In 1994, Betts received a Bachelor of Science degree from North Carolina Wesleyan College, having majored in both Biology and Chemistry. Upon limited testing of Betts, the LNEC characterized Betts' learning disability as "mild" and concluded that he has "high average verbal conceptual skills and average intellectual ability," despite weaknesses in particular areas. Furthermore, after Dr. Muller administered the complete Wechsler Adult Intelligence Scale (WAIS–R) test, the results showed that Betts has

---

**6.** A helpful example of this standard is set out in *Price v. National Board of Medical Examiners,* 966 F.Supp. 419, 427 (S.D.W.Va.1997): Take, for example, two hypothetical students. Student A has average intellectual capability and an impairment (dyslexia) that limits his ability to learn so that he can only learn as well as ten percent of the population. His ability to learn is substantially impaired because it is limited in comparison to most people. Therefore, Student A has a disability for purposes of the ADA. By contrast, Student B has superior intellectual capability, but her impairment (dyslexia) limits her ability so that she can learn as well as the average person. Her dyslexia qualifies as an impairment. However, Student B's impairment does not substantially limit the major life function of learning, because it does not restrict her ability to learn as compared with most people. Therefore, Student B is not a person with a disability for purposes of the ADA.

an I.Q. in the superior range (96th percentile). Dr. Muller noted in his affidavit:

It is not unusual for a person with Mr. Betts' intelligence (in the superior range) to have a Learning Disability which is not diagnosed until he is confronted with greater academic challenges. People with high intelligence are frequently able to develop their own coping mechanisms for dealing with what they perceive to be a "weakness" without fully understanding they have a documentable Learning Disability.

(Def.'s Mem.Supp.Mot.Summ.J., Exhibit 4, ¶ 12.) Thus, whether as a result of Betts' coping mechanisms or otherwise, it appears that Betts' learning disorder does not restrict his ability to learn in comparison to the average person in the general population. As a result, the court finds that Betts is not "disabled" under 42 U.S.C. § 12102(2)(A).

### B.

▮ Alternatively, Betts asserts that he is disabled under § 12102(2)(C). In order to successfully assert that he is disabled under subsection (C), Betts must show that he has been "regarded as having," 42 U.S.C. § 12102(2)(C), "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," *id.* § 12102(2)(A).[7] Thus, there are essentially two ways in which Betts may qualify as disabled under § 12102(2)(C): (1) the University mistak-

enly believed that Betts has a mental impairment that substantially limits one or more major life activities; or (2) the University mistakenly believed that an actual, nonlimiting impairment substantially limits one or more major life activities.[8] *See* 28 C.F.R. § 35.104; *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2150, 144 L.Ed.2d 450 (1999). In *Sutton,* Justice O'Connor explained that

it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often 'resul[t] from stereotypic assumptions not truly indicative of ... individual ability.'

. . . .

... An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity.

*Sutton,* 119 S.Ct. at 2150 (quoting 42 U.S.C. § 12101(7)).[9]

Once again, the analysis regarding the phrase "substantially limits one or more major life activities" is applicable. As discussed above in relation to § 12102(2)(A), this involves a showing that Betts' learning disability restricts his ability to learn in comparison to the average person in the

---

7. Section 12102(2)(A) reads: "being regarded as having such an impairment." The phrase "such an impairment" refers back to the language in § 12102(2)(A), namely "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."

8. There is a third definition of the phrase "regarded as having an impairment" under 28 C.F.R. § 35.104, which states that an individual is disabled if he or she "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment...." However, this is inapplicable to the case at bar.

9. "By amending the definition of 'handicapped individual' to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." *School Bd. of Nassau Cty. v. Arline,* 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), *quoted in Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2150, 144 L.Ed.2d 450 (1999).

general population. Applying this analysis to § 12102(2)(C), Betts must show not only that the University regarded him as having a learning disability, but also that the University regarded him as having a learning disability *that restricts his ability to learn in comparison to the average person in the general population. See Sutton,* 119 S.Ct. at 2150; *Kelly v. Drexel Univ.,* 94 F.3d 102, 109 (3d Cir.1996) ("[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.").

In *Sutton,* the Supreme Court denied the petitioners' claim that they had been regarded as disabled. The Court found that the petitioners had demonstrated only that the respondent "regards their poor vision as precluding them from holding positions as a 'global airline pilot,' [not] ... that respondent regards petitioners as having a substantially limiting impairment." *Sutton,* 119 S.Ct. at 2151. The court relied on 29 C.F.R. § 1630.2(j)(3)(i), which states that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."

Similarly, in *Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), the Supreme Court declined to find that UPS had regarded Murphy as disabled. UPS had terminated Murphy because his high blood pressure was "regarded as preventing him from obtaining DOT health certification," which is required to be able to drive a commercial vehicle. *Id.* at 2138. However, the court drew a distinction between regarding Murphy as unfit for a particular job versus regarding him as "unable to perform a class of jobs utilizing his skills." *Id.* The court found that "petitioner is, at most, regarded as unable to perform only a particular job. This is insufficient, as a matter of law, to prove that petitioner is regarded as substantially limited in the

major life activity of working." *Id.* at 2139. *Compare Cline v. Wal–Mart Stores, Inc.,* 144 F.3d 294, 303–04 (4th Cir.1998) (Wal–Mart was found to have "regarded Cline as having an impairment that substantially limited the major life activity of working [because] Wal–Mart demoted Cline because it perceived him to be significantly restricted in his ability to perform ... a broad range of jobs.") *with Forrisi v. Bowen,* 794 F.2d 931, 935 (4th Cir.1986) ("Far from being regarded as having a 'substantial limitation' in employability, Forrisi was seen as unsuited for one position in one plant—and nothing more."). Thus, Betts must prove that the University regarded him as having a learning disability that restricts his ability to learn in comparison to the average person in the general population, not just his ability to attend medical school.

In support of his assertion that the University regarded him as disabled, Betts quotes extensively from the LNEC's evaluation letter and depositions of University officials, including Dr. Benjamin Sturgill (Chairman of the Admissions Committee and member of the Post-baccalaureate Promotions Committee), Dr. Lynn Davis (Betts' advisor and member of the Post-baccalaureate Promotions Committee), and Dr. Robert Carey (Dean of the Medical School). Betts also makes reference to the University's admission during discovery that Betts "had a specific learning disability as defined by the ADA and its regulations." (Def.'s Ans. Pl.'s Req. Admissions, Pl.'s Mem.Supp. Renewed Mot.Summ.J. at App. 1.) This evidence establishes that University officials believed that Betts had a "specific learning disability"; however, this is not in contention. Although Betts has demonstrated that University officials regarded him as having a learning disability, he has failed to marshal evidence that University officials regarded him as having a learning disability *that substantially limits his ability to learn* (i.e. restricts his ability to learn in comparison to the average person in the general population).

Betts also asserts that he was regarded as disabled under the ADA because University officials granted him accommodations (double time on exams) during his second semester. Betts points to the LNEC's evaluation letter, which states in part:

> Typically, such students benefit from the following recommended accommodations: double the standard time allotment on timed tests and exams.

> Under the provisions of the Americans with Disabilities Act (ADA), it is a responsibility of faculty to implement reasonable and appropriate accommodations. However if you believe that the recommended accommodations significantly compromise the academic integrity of your course, please contact us so that we may develop a plan for meeting the student's needs within the context of your class.

(Pl.'s Mem.Supp. Renewed Mot.Summ.J. at App. 7.) Contrary to Betts' interpretation of this letter, it merely makes a blanket statement about the ADA and proposes recommendations, but does not specifically conclude that Betts is entitled to ADA accommodations.

■ Betts also points to the deposition testimony mentioned above, in which University officials interpreted the LNEC evaluation. Drs. Sturgill, Davis, and Carey all agreed that it was their understanding that the LNEC determined that Betts was "eligible for services and accommodations under the [ADA]." (Sturgill, Davis, and Carey Depositions, Pl.'s Mem.Supp. Renewed Mot.Summ.J. at App. 9, 13, 17.) However, even if the LNEC and University officials erroneously believed Betts was eligible for accommodations under the ADA, this legal conclusion does not meet the ADA's definition of disability. Coming from University officials without legal training, such statements cannot be interpreted reasonably as intending to adopt the ADA's definition of disability, namely that Betts has a learning disability that restricts his ability to learn in comparison to the average person in the general population. This is a critical distinction; the purpose of § 12102(2)(C) is to avoid discrimination based on factual misconceptions and "stereotypic assumptions" regarding a person's ability to perform one of life's major activities, not to punish non-lawyers for drawing faulty legal conclusions. Furthermore, Betts' graduation from college with a double major foreclosed any possible belief that he was substantially limited in his ability to learn. University officials may have regarded Betts as unprepared for the rigors of medical school, but the facts do not justify an inference that they regarded him as limited in his ability to learn in comparison to the average person in the general population. As a result, the court finds that Betts is not "disabled" under 42 U.S.C. § 12102(2)(C).[10]

---

10. Even if the court were to find that the University regarded Betts as having such an impairment, and thus that Betts was "disabled" under § 12102(2)(C), Betts would still have to show that he was denied a benefit solely because of his disability. See 42 U.S.C. § 12132; *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264–65 (4th Cir.1995). In other words, he would have to prove that he was denied admission to the medical school because the University regarded him as limited in his ability to learn in comparison to the average person in the general population. Betts reminded the court of its earlier statement:

> As to the requirement that Plaintiff show a detriment based on his disability, in all likelihood he would be able to make such a showing on the merits. Clearly, if it is found that Plaintiff's poor performance resulted from a learning disability, he will have satisfied this criterion, since the University has admitted that Plaintiff was denied entry because of his poor performance.

(Pl.'s Mem.Supp. Renewed Mot.Summ.J. at 19 (quoting this court's September 12, 1996, Memorandum Opinion)). However, Betts fails to recognize that this reasoning applies to the definition of disability under § 12102(2)(A), not § 12102(2)(C). Clearly, Betts' poor performance was not caused by the University's *belief* that he was disabled. Thus, the court's holding would be the same regardless of its finding under § 12102(2)(C).

### III.

Finally, Betts asserts that the University should be prohibited from arguing the disability issue because (1) the University conceded this issue in its original motion for summary judgment; (2) the University admitted in discovery that Betts is disabled; and (3) principles of judicial estoppel should prevent the University from now arguing that Betts is disabled.

### A.

 First, Betts argues that the University conceded in its original motion for summary judgment that Betts is "disabled" under the ADA. The University, in making its original motion for summary judgment, did not contest the disability issue. Instead, it argued for summary judgment on the ground that Betts was not a "qualified individual," which is one of the elements of a prima facie ADA case and thus presents a dispositive issue. Betts argues that as a result of the University's failure to contest the issue of Betts' disability, the court should disregard the University's current argument on that issue.

 The court finds Betts' argument unpersuasive. A court may raise and consider a dispositive question of law even if it has been ignored, or agreed upon, by the parties. *See United States Nat'l Bank v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 446–48, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993); *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289–90, 37 S.Ct. 287, 61 L.Ed. 722 (1917). "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *United States Nat'l Bank*, 508 U.S. at 446, 113 S.Ct. 2173. A court is not necessarily *required* to consider such stipulated issues, but may, in its discretion, refuse to accept what is, in effect, "a stipulation on a question of law." *Id.* at 448, 113 S.Ct. 2173 (citing *Swift & Co.*, 243 U.S. at 289, 37 S.Ct. 287). In *Swift & Co.*, Justice Brandeis explained that

> [i]f the stipulation is to be treated as an agreement concerning the legal effect of admitted facts, it is obviously inoperative; since the court cannot be controlled by agreement of counsel on a subsidiary question of law.... If the stipulation is to be treated as an attempt to agree "for the purpose only of reviewing the judgment" below, that what are the facts shall be assumed not to be facts, a moot or fictitious case is presented. "The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it.... No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard." We treat the stipulation, therefore, as a nullity.

*Swift & Co.*, 243 U.S. at 289–90, 37 S.Ct. 287 (citations omitted).

The issue of whether Betts is "disabled," as that term is defined by the ADA in 42 U.S.C. § 12102(2), is a dispositive question of law, not a question of fact. As a result, the court may exercise its discretion to consider this issue regardless of the University's previous decision not to contest it.

### B.

 Second, Betts asserts that the University should be prohibited from arguing the disability issue because the University admitted in discovery that Betts is disabled. Betts points to his requests for admission, one of which asked the University to admit the following: "From all information of which you are currently aware, Plaintiff had a specific learning disability as defined by the ADA and its regulations as of May 28, 1996." The University admitted that "information currently available supports the conclusion that

Plaintiff had a learning disability; [and] denied that all such currently available information was available or known by Defendant on May 28, 1996." (Def.'s Ans. Pl.'s Req. Admissions, Pl.'s Mem.Supp. Renewed Mot.Summ.J. at App. 1.)

This admission does not preclude the University from arguing, or this court from considering, the disability issue. Rule 36 allows litigants to request admissions relating to "statements or opinions of fact or of the application of law to fact." Fed.R.Civ.P. 36(a). Indeed, the question required the University to apply known facts to determine a question of law: whether Betts had a "specific learning disability" as set forth in 28 C.F.R. § 35.104. In point of fact, the phrase "specific learning disability" is not defined by either the ADA or its regulations, as suggested by Betts' request for admission.

Nonetheless, even if this court were to allow such a stipulation on a question of law, the University has admitted only that Betts has a "mental impairment"; in order to prove that he is "disabled" under the ADA, Betts would still have to prove that he has a "mental impairment *that substantially limits one or more of the major life activities of such individual.*" 42 U.S.C. § 12102(2)(A) (emphasis added). Thus, the admission would not be conclusive and would not preclude the University from arguing the substantial limitation issue. In any case, even if the University had admitted that Betts is "disabled" under § 12102(2), this court could still, in its discretion, refuse to accept what is, in effect, a stipulation on a question of law. *See supra* Part IV.A. Therefore, the University's admission does not preclude further argument on this issue and does not prevent this court from considering it.

### C.

Third, Betts argues that the doctrine of judicial estoppel applies to prohibit the University from raising the issue of whether Betts is "disabled" under the ADA. Judicial estoppel is "an equitable doctrine that exists to prevent litigants from playing 'fast and loose' with the courts—to deter improper manipulation of the judiciary." *Folio v. City of Clarksburg,* 134 F.3d 1211, 1217 (4th Cir.1998) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 28–29 (4th Cir. 1995)). In order for judicial estoppel to apply, four elements must be present:

(1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently.

*Id.* at 1217–18 (citing *Lowery v. Stovall,* 92 F.3d 219, 224 (4th Cir.1996), *cert. denied,* 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997)).

The court need not go further than the second element. Because the issue of whether Betts is "disabled" under the ADA is a question of law, the doctrine of judicial estoppel is inapplicable.

### IV.

For the reasons stated above, the University's renewed motion for summary judgment granted and Betts' renewed motion for summary judgment is denied. The court will enter an appropriate order on this day.