UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

—————————

No. 00-2305
(CA-96-54-C)

—————————

Robert W. Betts, II,

                            Plaintiff - Appellant,

    versus

The Rector and Visitors of the University of
Virginia,

                         Defendant - Appellee.

—————————

O R D E R

—————————

The court amends its opinion filed September 7, 2001, as follows:

On the cover sheet, section 3, line 3 -- Judge Michael's name is deleted, and the district judge's name is corrected to read "Samuel G. Wilson, Chief District Judge."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT W. BETTS, II,
<u>Plaintiff-Appellant,</u>

v.

No. 00-2305

THE RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Samuel G. Wilson, Chief District Judge.
(CA-96-54-C)

Argued: June 4, 2001

Decided: September 7, 2001

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Dexter Brock Green, JONES & GREEN, L.L.P., Char-
lottesville, Virginia, for Appellant. Richard Croswell Kast, Associate
General Counsel/Special Assistant Attorney General, OFFICE OF
THE GENERAL COUNSEL, Charlottesville, Virginia, for Appellee.
**ON BRIEF:** Paul J. Forch, General Counsel/Special Assistant Attor-
ney General, Susan M. Davis, Associate General Counsel/Special
Assistant Attorney General, OFFICE OF THE GENERAL COUN-
SEL, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Robert W. Betts appeals from the district court's grant of summary judgment in favor of the Rector and Visitors of the University of Virginia (the University) on Betts's Americans with Disabilities Act (ADA) and Rehabilitation Act claims. The district court held that Betts does not have a disability as defined by the ADA. Specifically, the district court held (1) that Betts does not have an actual disability because his learning impairment does not substantially limit his ability to learn in comparison to the general population and (2) that the University did not regard Betts as having a disability. Although we agree with the district court that Betts does not have an actual disability under the ADA, the undisputed record reveals that the University regarded Betts as being disabled. See 42 U.S.C. § 12102(2)(C). We therefore reverse the district court's grant of summary judgment on the issue of disability and remand for further proceedings.

I.

After graduating from North Carolina Wesleyan College with degrees in biology and chemistry, Betts applied for admission in 1995 to the University's School of Medicine and was subsequently placed on the wait list. As an alternative to remaining on the wait list, Betts was offered a spot in the University's Medical Academic Advancement Post-Baccalaureate Program (MAAP), which was a one-year post college program designed to prepare minority and disadvantaged students for admission to the University's School of Medicine. The University guaranteed admission to the School of Medicine to every MAAP student who maintained a 2.75 GPA per semester and received no grade lower than a C.

Betts accepted the offer to join the MAAP and enrolled in June 1995. After completion of the fall semester, Betts had a 2.2 GPA and

2

a D- in Physics. Despite his failure to meet the program's requirements, the MAAP Promotions Committee (the Committee) informed Betts that he could remain in the program on a probationary basis. As a condition of his probation, Betts was required to receive tutoring and to undergo testing at the University's Learning Needs and Evaluation Center (LNEC) to determine if he had a learning disability. In addition, the Committee indicated that it would reevaluate his academic performance at the end of the spring semester and decide whether he would be allowed to enter the School of Medicine with the 1996 entering class.

Betts submitted to the testing, and the LNEC prepared a report for the Committee and a letter for his professors. The report concluded that Betts "had high average verbal conceptual skills and average intellectual ability" but demonstrated "significant weakness in particular patterns of abilities." It indicated that he lacked "adequate strategies when information exceed[ed] the storage capacity of his short term memory" and that he "demonstrated a pattern of uneven cognitive processing skills consistent with a mild learning disability." The LNEC recommended to Betts's professors that he be given "double the standard time allotment on timed tests and exams." Finally, the LNEC informed Betts's professors that "[u]nder the provisions of the Americans with Disabilities Act (ADA), it is the responsibility of faculty to implement reasonable and appropriate accommodations." At the time it recommended accommodations for Betts, the LNEC had a policy of proposing accommodations for a student only if it believed that the student had a disability under the ADA.

Betts's professors adopted the LNEC's recommendation and allowed him double time for five of his exams in the spring semester. Betts achieved a 3.5 GPA for the five exams, and the lowest grade that he received was a B. However, because several of Betts's spring semester exams were taken prior to the double time accommodation, he only had a GPA of 2.84 for that semester. As a result, he attained a 2.53 cumulative GPA for the entire year.

Because Betts failed to attain a 2.75 GPA, the Committee rescinded the conditional offer of acceptance to the University's School of Medicine. At the time of the Committee's decision, it knew that the LNEC had determined that Betts was disabled under the ADA and that he

3

had been provided accommodations. The Committee nonetheless believed that Betts "needed a longer period of time to demonstrate that the accommodation would in fact allow him to do well." Betts appealed the decision to Dr. Robert Carey, Dean of the School of Medicine, on June 10, 1996, but the appeal was unsuccessful.

Betts subsequently filed this suit in federal district court, claiming that the University violated the ADA, the Rehabilitation Act, and the Due Process Clause. Betts also asserted a state law contract claim. Both parties moved for summary judgment. The district court granted summary judgment in favor of the University. The court held that Betts was not a qualified individual under the ADA because he could not meet the academic requirements of the program. The district court also entered judgment for the University on Betts's due process and contract claims. When Betts appealed to this court, we affirmed the summary judgment on Betts's due process and contract claims, but we reversed on the ADA and Rehabilitation Act issues. We held that Betts was a qualified individual under the ADA and Rehabilitation Act. See Betts v. The Rector and Visitors of the Univ. of Va., No. 97-1850, 1999 WL 739415, at *5 (4th Cir. Sept. 22, 1999) (hereinafter Betts I). Because the district court assumed (without deciding) that Betts had a disability within the meaning of the ADA and Rehabilitation Act, we remanded with instructions that the district court determine whether Betts was disabled. See id. at *7. On remand the parties cross-moved for summary judgment on the disability issue. The district court held that Betts was not disabled and entered summary judgment once again in favor of the University. The court determined that Betts's learning disability does not substantially limit his ability to learn in comparison to the rest of the population. In addition, the court held that the University did not regard Betts as having a learning disability. Betts now appeals the district court's second award of summary judgment to the University. We review the district court's grant of summary judgment de novo. See Porter v. United States Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997).

II.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a

4

public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The primary issue on this appeal is whether Betts has a "disability" within the meaning of the ADA.**1** The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Betts claims that he is disabled under §§ 12102(2)(A) and (C). For the reasons that follow, we conclude that Betts is not disabled under § 12102(2)(A) because he has failed to show that his learning impairment substantially limits his ability to learn in comparison to the rest of the population. However, we agree with Betts that he has a disability under § 12102(2)(C). Because the University <u>regarded him</u> as having a disability that substantially limited his ability to learn, we hold that Betts has a disability under the ADA.

A.

Betts claims that he is disabled under 42 U.S.C. § 12102(2)(A). In <u>Betts I</u> we held that in order to establish a disability under § 12102(2)(A), Betts must prove that "his learning disorder restricts his ability to learn <u>in comparison to the general population</u>." <u>Betts I</u>, 1999 WL 739415, at *7 (emphasis added). <u>See also</u> 29 C.F.R. § 1630.2(j)(1); <u>Bartlett v. N.Y. State Bd. of Law Exam'rs</u>, 226 F.3d 69, 75 (2d Cir. 2000). Betts argues that there is a genuine issue for trial regarding whether he is disabled under § 12102(2)(A). We disagree. Although the record shows that Betts has a learning impairment, his impairment does not substantially limit his ability to learn in comparison to the general population. Betts has a history of academic achievement, and his learning abilities are comparable to the general population. Betts received biology and chemistry degrees from North Carolina Wesleyan College. In addition, the LNEC concluded that

_____

**1** Betts contends that the University in its original motion for summary judgment did not contest that he is disabled within the meaning of the ADA. He therefore argues that the district court should not have addressed the disability issue on remand. We disagree. The district court acted within its discretion to consider the disability issue notwithstanding the University's previous strategy. <u>See Saviano v. Comm'r</u>, 765 F.2d 643, 645 (7th Cir. 1985).

5

Betts's learning impairment was "mild" and that he has "high average verbal conceptual skills and average intellectual ability." Although Betts's expert witness concluded that the LNEC understated the severity of Betts's learning impairment, the expert did not indicate that Betts's impairment substantially limited his ability to learn in comparison to the general population. In fact, Betts's expert noted that Betts has a superior IQ and that he has developed coping mechanisms to mitigate his learning impairment. Because no reasonable factfinder could conclude that Betts's learning impairment substantially limited his ability to learn in comparison to the general population, the district court's grant of summary judgment on the issue of disability under § 12102(2)(A) was appropriate.

B.

Betts also asserts that he has a disability under 42 U.S.C. § 12102(2)(C). He has a disability under § 12102(C) if the University regarded him as having an impairment that substantially limited his ability to learn. See 42 U.S.C. § 12102(2)(C). Thus, Betts must prove that (1) the University "mistakenly believe[d] that [he] has a physical impairment that substantially limits" his ability to learn, or (2) the University "mistakenly believe[d] that an actual, nonlimiting impairment substantially limits" his ability to learn. Sutton v. United Air Lines, 527 U.S. 471, 489 (1999). "In both cases, it is necessary that [the public entity] entertain misperceptions about the individual -- it must believe either that [the individual] has a substantially limiting impairment that [the individual] does not have or that [the individual] has a substantially limiting impairment when, in fact, the impairment is not so limiting." Id. at 489.

The undisputed record reveals that the University regarded Betts as having a disability under the ADA. The University delegated to the LNEC the responsibility and authority to determine whether individuals are entitled to accommodations under the ADA. At the time Betts was enrolled in the MAAP program, the LNEC maintained a policy that it would not recommend learning or testing accommodations unless it believed that a student had a disability as defined by the ADA. Here, the LNEC recommended that Betts should receive a double-time accommodation for his exams and advised Betts's professors that "[u]nder the provisions of the Americans with Disabilities

6

Act (ADA), it is the responsibility of faculty to implement reasonable and appropriate accommodations." According to the LNEC's own policy, it would not have proposed the double-time accommodation for Betts unless it regarded him as having a disability under the ADA. After receiving the LNEC's recommendation, Betts's professors essentially adopted the LNEC's conclusions and treated Betts as if he had a disability under the ADA. His professors did not question the LNEC's assessment and provided the accommodation for all of his remaining exams.

Several MAAP Promotions Committee members admitted in depositions that the University regarded Betts as being disabled. For example, Dr. Benjamin Sturgill, Chairman of the University Medical School Admissions Committee and a member of the MAAP Promotions Committee testified:

> Q. All right. Your understanding is that he did get evaluated by the Learning Needs and Evaluation Center?
>
> A. That's my understanding, yes.
>
> Q. Okay. And that he was determined to be eligible for services and accommodations under the Americans with Disabilities Act by the LNEC?
>
> A. Correct.
>
> * * *
>
> Q. So the [MAAP] committee was then aware that he had been evaluated by the LNEC, and they had documented that he did have some disabilities under the ADA?
>
> A. Yes.
>
> * * *
>
> Q. What do you recall about the discussions of the committee at the May 28 meeting about the fact that he had

7

been determined to be disabled under the ADA and had been receiving accommodations?

A. The [MAAP] committee felt, as I recall, that he certainly might benefit from this accommodation but did not feel like we had enough information to allow him to begin Medical School. The committee felt like we needed a longer period of time to demonstrate that the accommodation would in fact allow him to do well.

In addition, Dr. Robert Carey, Dean of the University's Medical School and the arbiter of Betts's appeal of his dismissal from the MAAP, confirmed that the University regarded Betts as being disabled:

Q. You were aware [on June 10] that the LNEC had determined that he did have documented disabilities as of April 1996?

A. Yes.

Q. Okay. And that he was eligible for services and accommodations under the Americans with Disabilities Act as of that time?

A. Yes.

Q. Okay. And that the accommodations that were recommended were that on the remainder of his tests for that semester that he be allowed double time on those tests?

A. Yes.

Q. Okay. Were you aware on June 10 that he had actually received double time on the remainder of his tests for that second semester beginning some time in April of 1996?

A. Yes.

8

Based on the foregoing undisputed evidence, we conclude that the University regarded Betts as being disabled under the ADA. As Betts himself points out, "the University in this case treated [him] in every respect as if he had a learning disability protected by the ADA." In short, the record establishes that Betts has a disability under 42 U.S.C. § 12102(2)(C). Accordingly, we reverse the district court's grant of summary judgment on the disability issue and remand for further proceedings.[2]

REVERSED AND REMANDED

_____

[2] Our decision is limited to the question of whether Betts has a disability under the ADA. We note that on appeal neither party raised the issue of causation, that is, whether the University denied Betts a benefit because of his disability. See 42 U.S.C. § 12132; Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995).

9