**Robert W. BETTS, II, Plaintiff,**

v.

**RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA Defendants.**

**No. CIV.A. 3:96–00054.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

April 23, 2002.

Dexter Brock Green, Jones & Green, Charlottesville, VA, for plaintiff.

Richard Croswell Kast, Susan M. Davis, University of Virginia, Office of General Counsel, Charlottesville, VA, for defendant.

## *MEMORANDUM OPINION*

WILSON, Chief Judge.

This is a suit for declaratory and injunctive relief by Plaintiff, Robert W. Betts, II, ("Betts"), against Defendants, Rector and Visitors of the University of Virginia ("University"), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Rehabilitation Act, 29 U.S.C. § 701 *et seq.;* 42 U.S.C. § 1983; and Virginia contract law; because the University denied him admission to the University's medical school. This court has jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 794(a), and 42 U.S.C. §§ 12133, 2000e–5.

On May 27, 1997, this court granted summary judgment to the University and dismissed all of Betts' claims. On appeal, the Fourth Circuit affirmed this court's granting of summary judgment as to the § 1983 and state law claims, but reversed as to Betts' ADA and Rehabilitation Act claims and remanded for a determination of whether Betts is "disabled" under the ADA. *See Betts v. Rector and Visitors of the University of Virginia,* No. 97–1850, 1999 WL 739415 (4th Cir. Sept.22, 1999) (unpublished opinion).

On September 11, 2000, this court granted summary judgment to the University and dismissed all of Betts' claims on the

grounds that Betts was not "disabled" under the ADA because he did not have an actual disability under § 12102(2)(A) and the University did not regard him as having a disability under § 12102(2)(C). *See Betts v. Rector and Visitors of the University of Virginia,* 113 F.Supp.2d 970 (W.D.Va.2000). On appeal, the Fourth Circuit agreed that Betts did not have an actual disability under § 12102(2)(A), but reversed the court's grant of summary judgment because "the undisputed record reveals that the University regarded Betts as being disabled" under § 12102(2)(C) and remanded the case. *Betts v. Rector and Visitors of the University of Virginia,* 18 Fed. Appx. 114, *115, 2001 WL 1023115, *1 (4th Cir. September 7, 2001) (unpublished opinion).

This matter is again before the court on cross motions for summary judgment. The University argues that the Eleventh Amendment bars Betts' claims against the University, that Betts cannot establish the causation necessary for recovery under the ADA or the Rehabilitation Act, and that subsequent events have rendered the case moot. Betts contests these arguments and claims that he is entitled to summary judgment. The court declines to decide whether the Eleventh Amendment bars Betts' claim, and finds that the case is not moot and that the University denied Betts admission to the medical school for reasons wholly unrelated to its perception that Betts had a disability. Accordingly, because Betts cannot show that the University discriminated against him by reason of a disability, the court will grant the University's motion for summary judgment.

## I.

After graduating from North Carolina Wesleyan College with degrees in biology and chemistry, Betts applied for admission in 1995 to the University's School of Medicine and the University placed him on the wait list. As an alternative to remaining on the wait list, the University offered Betts a spot in its Medical Academic Advancement Post–Baccalaureate program ("MAAP"), which was a one-year post college program designed to prepare minority and disadvantaged students for admission to the University's School of Medicine. The University guaranteed admission to the School of Medicine to every MAAP student who, *inter alia,* maintained a 2.75 GPA per semester, received no grade lower than a C, and met the requirement of satisfactory performance to be judged by a faculty committee.

Betts joined the MAAP program in the summer of 1995; however, he failed to meet the minimum requirements. After completion of the fall semester, Betts had a 2.2 GPA and a D in Physics. Nonetheless, the faculty committee decided that Betts could remain in the program on a probationary basis, on the condition that he receive tutoring and submit to testing for a learning disability. In addition, the faculty committee indicated that it would reevaluate his academic performance at the end of the spring semester and decide whether it would allow him to enter the School of Medicine with the 1996 entering class.

Betts agreed to these terms, and the University Learning Needs and Evaluation Center ("LNEC") examined him. The LNEC reported that Betts lacked "adequate strategies when information exceed[ed] the storage capacity of his short term memory," and that he "demonstrated a pattern of uneven cognitive processing skills consistent with a mild learning disability." The LNEC mistakenly concluded that Betts was actually disabled under the ADA and informed Betts' professors that under the ADA, "it is the responsibility of the faculty to implement reasonable and appropriate accommodations." The

LNEC recommended that Betts receive double time on all exams.

Betts' professors adopted the LNEC's recommendations and allowed him double time for five of his exams in the spring semester. Betts achieved a 3.5 GPA for the five exams. However, because Betts took several of his spring semester exams prior to the double time accommodation, he only achieved a 2.84 GPA for the spring semester. His cumulative GPA for the entire year was a 2.53.

On May 28, 1996, the faculty committee met to re-evaluate Betts' performance and decided that, based on Betts' GPA for the entire academic year, Betts had failed to demonstrate that he was prepared to enter medical school and dismissed him from the program. In its recent opinion, the Fourth Circuit explained the reasons for the dismissal:

> Because Betts failed to attain a 2.75 GPA, the Committee rescinded the conditional offer of acceptance to the University's School of Medicine. At the time of the Committee's decision, it knew that the LNEC had determined that Betts was disabled under the ADA and that he had been provided accommodations. The Committee nonetheless believed that Betts "needed a longer period of time to demonstrate that the accommodation would in fact allow him to do well."

*Betts v. Rector and Visitors of the University of Virginia*, 18 Fed. Appx. 114, *117, 2001 WL 1023115, *2 (4th Cir. September 7, 2001) (unpublished opinion).

Dr. Benjamin Sturgill testified in his deposition as to the motivating factor for the faculty committee's decision:

Q: What do you recall about the discussions of the committee at the May 28 meeting about the fact that he [Betts] had been determined to be disabled under the ADA and had been receiving accommodations?

A: The committee felt, as I recall, that he certainly might benefit from this accommodation but did not feel like we had enough information to allow him to begin medical school. The committee felt like that he needed a longer period of time to demonstrate that accommodation would in fact allow him to do well.

Q: Okay. But rather than give him a longer period of time, the committee decided to dismiss him totally from the program on May 28?

A. By longer period of time, I mean another academic year at least, because the remainder of the program consisted of MAAP Two, which we did not feel would be enough time to evaluate whether he could do medical school work.

(Sturgill Dep. at 23).

Betts appealed the decision to the Dean of the Medical School, Robert M. Carey, who notified Betts that he would uphold the faculty committee's decision. Betts then filed this lawsuit.

### III.

In its summary judgment motion, the University argues that the Eleventh Amendment bars the suit,[1] that Betts cannot establish the causation necessary for recovery under the ADA and the Rehabilitation Act, and that the case is moot. Betts argues that the University waived its Eleventh Amendment immunity by failing

---

1. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any For-

eign State." Although, by its terms, the Eleventh Amendment does not prevent a citizen of a state to sue that state in federal court, it has been construed to bar such suits. *See Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

to raise it sooner and by accepting certain federal funds; that Congress constitutionally abrogated the University's Eleventh Amendment immunity; that despite the Eleventh Amendment, Betts is entitled to prospective injunctive relief under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); that the University discriminated against Betts on the basis of a disability; and that since there is an available remedy, the claim is not moot.

Before addressing these arguments, however, the court must determine in what order to address them. The court finds that Betts cannot prove that the University discriminated against him on account of his perceived disability. The court finds that the causation ground clearly supports the University's summary judgment motion. Typically, "if a case can be decided on either of two grounds, one involving a constitutional question, and the other, a question of statutory construction or general law, the court should decide on the basis of the latter." *Maryland v. E.P.A.,* 530 F.2d 215, 227 (4th Cir.1975) *vacated on other grounds,* 431 U.S. 99, 97 S.Ct. 1635, 52 L.Ed.2d 166 (1977). However, since mootness and Eleventh Amendment immunity are jurisdictional, the Supreme Court's decision in *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), may require the court to address these issues first.

In *Steel Co.,* the Supreme Court rejected the "doctrine of hypothetical jurisdiction,"

that is, the practice of several courts of appeals of assuming Article III jurisdiction where the case can be more readily resolved on the merits in favor of the party objecting to jurisdiction. *Id.* at 94, 118 S.Ct. 1003. "'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Id.* (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). But the exact scope of *Steel Co.* is less than clear. The five Justice majority acknowledged that some of the Court's precedent "diluted the absolute purity of the rule that Article III jurisdiction is always an antecedent question." *Id.* at 101, 118 S.Ct. 1003. Moreover, two of these five Justices joined in a concurring opinion in which they stated, "the Court's opinion should not be read as cataloging an exhaustive list of circumstances under which federal courts may exercise judgment in 'reserv[ing] difficult questions of ... jurisdiction when the case alternatively could be resolved on the merits in favor of the same party.'" *Id.* at 1020 (O'Connor, J., joined by Kennedy, J., concurring).[2] With those concerns in mind, the court finds for the following reasons that although it should address the mootness question before addressing the merits of Betts' claim, the court need not decide the Eleventh Amendment question, and instead can proceed to the merits.

**2.** Additionally, in another concurring opinion, Justice Breyer stated:

The Constitution does not impose a rigid judicial "order of operations," when doing so would cause serious practical problems. . . . This court has previously made clear that courts may "reserv[e] difficult questions of ... jurisdiction when the case alternatively could be resolved on the merits in favor of the same party." That rule makes theoretical sense, for the difficulty of

the jurisdiction question makes reasonable the court's jurisdictional assumption. And that rule makes enormous practical sense. Whom does it help to have appellate judges spend their time and energy puzzling over the correct answer to an intractable jurisdictional matter, when (assuming an easy answer on the substantive merits) the same party would win or lose regardless? *Id.* at 111, 118 S.Ct. 1003 (citations omitted).

Before *Steel Co.*, several opinions by the Fourth Circuit indicated that a court can reserve questions of Eleventh Amendment immunity and resolve a case on the merits in favor of the party asserting immunity. *See Stemple v. Board of Education*, 623 F.2d 893, 896 (4th Cir.1980);[3] *AER–Aerotron, Inc. v. Texas Dept. of Transportation*, 104 F.3d 677, 681 (4th Cir.1997).[4] After *Steel Co.*, the Fourth Circuit has not ruled on this issue, and there is a split in authority among the other courts of appeals, "with the Fifth, Ninth, and Eleventh Circuits ruling that the Eleventh Amendment immunity cannot be bypassed en route to the merits,[5] the First, Sixth, Seventh, and D.C. Circuits ruling that it can,[6] and the Second and Tenth Circuits apparently ruling both ways.[7]" Scott J. Idleman, *The Emergence of Jurisdictional Resequencing in the Federal Courts*, 87 Cornell L.Rev. 1, 96 (2001).

The difference of opinion on this question is largely the result of differing views on the nature of Eleventh Amendment immunity. Generally, courts that hold against bypassing the Eleventh Amendment question view the Eleventh Amendment as a straight-forward limit on the court's subject matter jurisdiction, while courts that hold in favor of bypassing the Eleventh Amendment question view the Eleventh Amendment as quasi-jurisdictional and focus on the differences between Eleventh Amendment immunity and traditional subject matter jurisdiction. *See id.* Thus, to determine whether *Steel Co.* requires this court to address questions of

---

3. In *Stemple*, the district court granted the defendant's motion to dismiss on the grounds, *inter alia*, that the Eleventh Amendment barred the plaintiff's claim under section 615 of the Education for All Handicapped Children Act of 1975 ("EHCA"). *Id.* at 896–97. On appeal, the plaintiff claimed that the Eleventh Amendment did not bar her claim. *Id.* at 897. The Fourth Circuit, however, found that it "need not decide any of the issues that [plaintiff] seeks to raise .... By the language of § 615, if it is assumed to be applicable here, we think that plaintiff has no right to reimbursement, and that there is thus no need to decide the various issues that she seeks to raise." *Id.*

4. In *AER–Aerotron, Inc.*, the Fourth Circuit determined that the defendant did not " 'file a proof of claim' " within the meaning of § 106(b) of the 1994 Bankruptcy Reform Act, and therefore "we have no occasion to address the broader constitutional question" regarding the abrogation and waiver of Eleventh Amendment immunity. *Id.* However, in a opinion concurring in judgment only, Judge Niemeyer stated "While I would agree with the statutory interpretation placed on 11 U.S.C. § 106(b) by the majority, I conclude that we must address the Eleventh Amendment issue first because it determines our power as a court to make *any* statutory interpretation." *Id.* at 682.

5. *See Foulds v. Tex. Tech Univ.*, 171 F.3d 279, 285–88 (5th Cir.1999); *Cal. Franchise Tax Bd. v. Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999); *Seaborn v. Fla., Dep't of Corr.*, 143 F.3d 1405, 1407 n. 2 (11th Cir.1998). *But cf. McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1258–59 (11th Cir.2001) (distinguishing *Seaborn* and holding that Eleventh Amendment immunity can be bypassed if the defendant indicates a willingness for the court to address the merits first).

6. *See Parella v. Ret. Bd. of the Employees' Ret. Sys.*, 173 F.3d 46, 53–57 (1st Cir.1999); *Brindley v. Best*, 192 F.3d 525, 531 (6th Cir. 1999); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 696 (7th Cir.1999), *cert. denied*, 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1079 (2000); *United States ex rel. Long v. SCS Bus. & Technical Inst., Inc.*, 173 F.3d 890, 896–97 (D.C.Cir.1999).

7. *Compare Hale v. Mann*, 219 F.3d 61, 66–67 (2d Cir.2000) *with Sanghi v. Frendel*, No. 00–7538, 2000 WL 1804506, at *2 (2d Cir. Dec.7, 2000), *cert. denied*, 533 U.S. 917, 121 S.Ct. 2523, 150 L.Ed.2d 695 (2001); and *compare Frazier v. Simmons*, 254 F.3d 1247, 1252 (10th Cir.2001) *with Johnson v. Oklahoma*, Nos. 99–6322, 99–6427, 2000 WL 1114194, at *1 (10th Cir. Aug.7, 2000).

Eleventh Amendment immunity first, the court must address the nature of Eleventh Amendment immunity.

In *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998), a unanimous Supreme Court stated that it had not decided whether Eleventh Amendment immunity is a matter of subject matter jurisdiction. *Id.* at 391, 118 S.Ct. 2047. The Court, however, did note important differences between Eleventh Amendment immunity and a defect in a district court's original subject matter jurisdiction, such as the presence of a non-diverse party in a diversity suit:

> The presence of the nondiverse party automatically destroys original jurisdiction: No party need assert the defect. No party can waive the defect or consent to jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own.

> The Eleventh Amendment, however, does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense. Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it.

*Id.* at 389, 118 S.Ct. 2047 (citations omitted).

In a concurring opinion, Justice Kennedy referred to the "hybrid nature of the jurisdictional bar erected by the Eleventh Amendment," and explained that "[a]lthough the text [of the Eleventh Amendment] is framed in terms of the extent of the 'Judicial power of the United States,' our precedents have treated the Eleventh Amendment as 'enact[ing] a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction.'" *Id.* at 394, 118 S.Ct. 2047 (citations omitted).

The Fourth Circuit has stated that the "Eleventh Amendment limits the Article III jurisdiction of the federal courts to hear cases against States." *Kitchen v. Upshaw*, 286 F.3d 179, 183–84 (4th Cir. 2002). However, the Fourth Circuit also has noted that although the Eleventh Amendment "'partakes of the nature of a jurisdiction bar,'" "Eleventh Amendment immunity is not truly a limit on the subject matter jurisdiction of federal courts, but a block on the exercise of that jurisdiction." *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir.1995) (quoting *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 n. 19, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)).

The reasoning of an unpublished, and therefore non-binding, opinion of the Fourth Circuit, which this court finds persuasive, suggests that the court is allowed to bypass a waivable jurisdictional defense and "resolve a case on a less demanding basis, so long as the liberty of the party objecting to jurisdiction is in no way impinged." *Whitehead v. Grand Duchy of Luxembourg*, No. 97–2703, 1998 WL 957463, *3 (4th Cir. Sept.11, 1998).[8] Although *Whitehead* did not involve an Eleventh Amendment question, the court confronted a "difficult jurisdictional question" under the Foreign Sovereign Immunities Act (FSIA) or, alternatively, a "clear-cut" question on the merits. *Id.* at *2. After analyzing the Supreme Court's rejection of the doctrine of hypothetical jurisdiction in *Steel Co.*, the court inquired "what sort of animal FSIA 'jurisdiction' is." *Id.* at *3. Under the FSIA, "'a foreign state is pre-

---

**8.** Although unpublished opinions of the Fourth Circuit are not binding precedent, they are entitled "to the weight they generate by the persuasiveness of their reasoning." *Hupman v. Cook*, 640 F.2d 497, 501 n. 7 (4th Cir.1981).

sumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks *subject-matter jurisdiction* over a claim against a foreign state.'" *Id.* (quoting *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993)) (emphasis added). "The very first exception to immunity listed in the FSIA is where 'the foreign state has waived its immunity either explicitly or by implication.'" *Id.* (quoting 28 U.S.C. § 1605(a)(1)). The Fourth Circuit then stated:

> The character of the limits on our FSIA jurisdiction is thus revealed. If a foreign nation can consent to suit in our courts, then the FSIA's limitation on our jurisdiction must flow from respect for that nation's sovereignty rather than from our own inherent inability to hear the case. Consequently, as long as we do not affront Luxembourg's sovereignty here, we believe that we may resolve the case in any manner we deem best. The forum selection clause is that manner.

The Fourth Circuit's reasoning in *Whitehead* offers an appropriate framework to analyze the question at hand.[9] Although the Eleventh Amendment is a type of jurisdictional bar, it has characteristics dissimilar to other defects of subject matter jurisdiction. For example, unlike subject matter jurisdiction, a defendant can waive Eleventh Amendment immunity, *see Schacht,* 524 U.S. at 389, 118 S.Ct. 2047, and, unlike subject matter jurisdiction, the court need not always raise *sua sponte* the issue of Eleventh Amendment immunity, *see id.* ("[u]nless the State raises the matter, a court can ignore it").

Paraphrasing the Court of Appeals, the character of the jurisdictional limits of Eleventh Amendment immunity is thus revealed. If the defendant can waive it, and if the court need not always raise it *sua sponte,* then the Eleventh Amendment's limitation on this court's jurisdiction flows from respect for the state's sovereignty rather than from this court's inherent inability to hear the case. Consequently, if the court does not impinge the state's sovereignty-its special position in our federal system-the court may resolve the case on the merits.

A decision on the merits in the University's favor will not impinge Virginia's sovereignty. Indeed, the University alternatively argued that the court should grant its summary judgment motion on the

---

9. The Fourth Circuit relied on an *en banc* decision by the Fifth Circuit that held that a district court may not address personal jurisdiction, a "waivable jurisdictional defect," without first resolving issues of subject matter jurisdiction, at least in cases removed from state courts. *Marathon Oil Co. v. A.G. Ruhrgas,* 145 F.3d 211 (5th Cir.1998) *rev'd* 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). The Fifth Circuit held that subject matter jurisdiction is a fundamental limitation on the federal judiciary's power to act, whereas waivable barriers to that action (e.g. personal jurisdiction) " 'represent[ ] a restriction on the judicial power not as a matter of sovereignty, but as a matter of individual liberty.' " *Id.* at 217. The Supreme Court, however, reversed the Fifth Circuit and stated: "While *Steel Co.* reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues. '[A] court that dismisses on ... non-merits grounds such as ... personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles underlying *Mansfield* and *Steel Company.*' " 526 U.S. 574, 584–84, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (citation omitted). The Supreme Court's reversal of the Fifth Circuit in *Marathon Oil Co.,* however, does not diminish the reasoning of the Fourth Circuit in *Whitehead* that, in some circumstances, a court can reserve difficult questions involving waivable jurisdictional defenses and resolve a case on the merits in favor of the party asserting the waivable jurisdictional defense.

ground that Betts cannot establish the causation necessary for recovery under the ADA and Rehabilitation Act. In a similar case before the Eleventh Circuit, the defendants also argued that the Eleventh Amendment deprived the court of jurisdiction and, alternatively, that they were entitled to dismissal on the merits. *See McClendon v. Georgia Dept. of Comm. Health,* 261 F.3d 1252, 1257 (2001). In *McClendon,* the Eleventh Circuit interpreted the defendants' position "as a conditional assertion of Eleventh Amendment sovereign immunity-[the defendants] insist upon that defense only if it is necessary to prevent judgment against them on the merits." *Id.* at 1258. "In other words, the defendants are willing to withhold the assertion of the Eleventh Amendment provided that our disposition of the merits issue is favorable to them. Only if we are going to decide the merits issue against them do they insist upon a ruling on the Eleventh Amendment issue." *Id.* Thus, given the defendant's "willingness to permit the court to reach the merits instead of considering the Eleventh Amendment issue," the Eleventh Circuit was not bound by its previous ruling that "'an assertion of Eleventh Amendment immunity must be resolved before a court may address the merits of the underlying claim(s).'" *Id.* (quoting *Seaborn v. Florida,* 143 F.3d 1405, 1407 (1998)).

█ Similarly, in this case, the University moved for summary judgment on three alternative theories: Eleventh Amendment immunity, lack of causation, and mootness. During oral arguments, the University argued both the Eleventh Amendment issue and the causation issue. While not waiving its Eleventh Amendment immunity defense, the University has expressed a willingness to permit the court to decide the case on the merits in its favor. Like the Eleventh Circuit, this court finds that it is permissible to reserve a difficult Eleventh Amendment question when the underlying claim lacks merit and when the defendant invites a decision on the merits.

This rule makes practical sense as well. First, why should a court decide a difficult Eleventh Amendment question when there is a clear-cut answer on the merits in favor of the defendant? Second, and more important, if the court decided the Eleventh Amendment issue in favor of the defendant and the plaintiff appealed, why should the defendant be forced to spend resources arguing the Eleventh Amendment issue on appeal if the defendant easily prevails on the merits?

Although the court does not believe that its approach is inconsistent with other relevant Supreme Court and Fourth Circuit precedent, the court believes it necessary to distinguish that precedent. In *Vermont Agency of Natural Resources v. United States,* 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000), the Supreme Court held that a federal court can address the question of whether a statute authorizes a suit before addressing the question of whether the Eleventh Amendment forbids the suit. *Id.* at 779, 120 S.Ct. 1858.

When these two questions are at issue, not only is the statutory question "logically antecedent to the existence of" the Eleventh Amendment question, but also there is no realistic possibility that addressing the statutory question will expand the Court's power beyond the limits that the jurisdictional restriction has imposed. The question whether the statute provides for suits against the States (as opposed, for example, to the broader question whether the statute creates any private cause of action whatever, or the question whether the facts alleged make out a "false claim" under the statute) does not, as a practical matter, permit the court to pronounce upon any issue, or upon the rights of any person, beyond issues and persons that

would be reached under the Eleventh Amendment inquiry anyway.

*Id.* (citations omitted).

This court does not believe this pronouncement prohibits federal courts from first addressing statutory questions that are not " 'logically antecedent to the existence of' the Eleventh Amendment question." *Steel Co.*'s general rule that questions of subject matter jurisdiction must be addressed before a decision on the merits flows from the nature of the jurisdictional question and not the nature of the statutory question. Here, the court finds that it appropriately addresses the merits question first because of the hybrid nature of the Eleventh Amendment's jurisdictional bar and because of the University's willingness for the court to address the case on the merits. When the defendant expresses a willingness for the court to decide a case in its favor on the merits without deciding whether the defendant is entitled to Eleventh Amendment immunity, the court makes no assumptions of law declaring power that violates the principles underlying *Steel Co. See A.G. Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

The Fourth Circuit's decision in *Bell-South Telecommunications Inc. v. North Carolina Utilities Commission*, 240 F.3d 270 (4th Cir.2001), also is distinguishable from the present case. In that case, BellSouth named the North Carolina Utilities Commission (the "NCUC") defendant in a federal lawsuit seeking to review a decision of the NCUC. *Id.* at 273. The NCUC asserted Eleventh Amendment immunity; however, the district court reserved the Eleventh Amendment question and remanded the case to the NCUC to give it an opportunity to reexamine its conclusions. *Id.* The NCUC appealed, asserting that the district court should have addressed the Eleventh Amendment question

first. *Id.* The Fourth Circuit reversed, stating:

In taking these steps, the district court asserted federal subject matter jurisdiction over a State without recognizing its sovereign immunity and, in the exercise of that jurisdiction, ordered further briefing, a remand, and the deferral of the Eleventh Amendment immunity issue until the case returned to the court. Its refusal to address the Eleventh Amendment issue at the outset, however, interfered with North Carolina's sovereignty as protected by the Constitutional structure .... In short, the actions taken by the district court in this case violated the essence of the Eleventh Amendment protection: "The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting the State to the coercive process of judicial tribunals at the instance of private parties."

*Id.* at 276 (citations omitted).

Unlike *BellSouth*, however, by reserving the Eleventh Amendment question, this court is not requiring anything further from the University, and the University does not object to the court deciding this case in its favor on the merits. By addressing the merits question first, this court does not subject Virginia to the "indignity" of "the coercive process of judicial tribunals at the instance of private parties." To the contrary, the court is dismissing the action against the University.

The present case is also distinguishable from *Roach v. West Virginia Regional Jail and Correctional Facility Authority*, 74 F.3d 46 (4th Cir.1996). Roach brought an action in state court under § 1983 against the West Virginia Regional Jail and Correctional Facility Authority ("RJA"). *Id.* at 48. After RJA removed the case to federal court, the district court dismissed the action on the grounds that

the Eleventh Amendment barred the suit in federal court and that RJA was not a "person" subject to suit under § 1983. *Id.* at 48. The Fourth Circuit reversed the dismissal, holding that 28 U.S.C. § 1447(c) required that the court remand a case if it appears that the district court lacks subject matter jurisdiction. *Id.* Since, the "Eleventh Amendment prevented the district court from exercising subject matter jurisdiction over Roach's claims," " § 1447(c) required the court to remand the action to state court." *Id.* at 49. Additionally, the Fourth Circuit held that the district court should not have ruled that RJA was not a "person" within the meaning of § 1983. The Fourth Circuit stated that "because the district court lacked jurisdiction over the action, it could not rule on the merits of the claim." *Id.*

First, this case is distinguishable because defendants did not remove this case from state court and this case does not involve § 1447(c). Second, the Fourth Circuit decided *Roach* before the Supreme Court decided *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998), which seemingly conflicts with *Roach.* In similar factual circumstances, the *Schacht* Court held that "the presence in an otherwise removable case of a claim that the Eleventh Amendment may bar does not destroy removal jurisdiction that would otherwise exist." *Id.* at 386, 118 S.Ct. 2047. The *Schacht* Court reasoned that at the time of removal

> the State's participation as a defendant would not automatically have placed the case outside the federal court's jurisdictional authority. That is because the underlying relevant condition (the federal courts' effort to assert jurisdiction over an objecting State) could not have existed prior to removal, and because the State might not have asserted the defense in federal court, but could have decided instead to defend on the merits.

(Here, for example, the State while not waiving its Eleventh Amendment defense, has asserted in the alternative that Schacht could not state a § 1983 claim against the State.)

*Id.* at 390, 118 S.Ct. 2047 (citations omitted).

*Schacht* supports the court's holding today that, absent an objection from the defendant, the court can reserve the defendant's Eleventh Amendment argument and rule in favor of the defendant on the merits.

Next, the court will turn to whether it should address Defendants' mootness arguments before addressing the merits. Although *Steel Co.* does not require that the court decide the Eleventh Amendment issue before turning to the merits, *Steel Co.* does direct the court to decide issues of Article III standing before addressing the merits. Unlike the "jurisdictional" bar created by Eleventh Amendment immunity, the "case and controversy" requirement of Article III cannot be consented to by the parties. Unlike the Eleventh Amendment, the constitutional standing requirement flows from the court's inherent inability to hear the case. Since the University claims that the case is now moot, the court should address this issue before turning to the merits of Betts' ADA and Rehabilitation Act claims.

**A.**

█ In his Amended Complaint, Betts exclusively seeks declaratory and injunctive relief that would place him back in the MAAP Program. The University School of Medicine Director of Admissions Beth Bailey, however, noted in her affidavit that "the MAAP Program has been discontinued at the University." The University argues that since the relief Betts seeks is no longer available, the case is now moot and the court should dismiss it.

Betts, however, questions the University's contention that the MAAP program no longer exists because the University continues to advertise the MAAP program on its website. Betts also argues that the request in his Amended Complaint to be placed back in the MAAP program was, in essence, a request to be placed in the first year of Medical School. Furthermore, Betts argues that the broad injunctive power of federal courts allows this court to fashion a specific remedy appropriate to the circumstances of this case.

The court agrees with Betts. Reinstatement into the MAAP program, if it exists, or placement directly into the first year Medical School class are available remedies responsive to the University's allegedly illegal conduct. Therefore, the case is not moot.

### B.

■ Next, the court will address the question of causation. Although courts have construed the ADA and Rehabilitation Act to impose the same requirements, the acts have distinct standards of causation. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468–71 (4th Cir.1999). Under the Rehabilitation Act, an individual must demonstrate that defendant discriminated against him *solely by reason of* his disability. *Id.* (citing § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (emphasis added)). In contrast, under the ADA, an individual must demonstrate that defendant discriminated against him *by reason of* his disability. *Id.* (citing 42 U.S.C. § 12132 (emphasis added)). The ADA only requires that a plaintiff demonstrate that his disability was a motivating factor in the adverse decision, even though there may have been other factors that contributed to the decision. *Id.* at 470.

■ Here, the record clearly indicates that the University dismissed Betts from the MAAP program *solely* because Betts

failed to meet the objective GPA requirement for the academic year. In his summary judgment brief, Betts admits that his failure to meet a GPA of 2.75 for the academic year "was the *only* reason" the University dismissed him from MAAP. (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 26). Betts does not argue that the GPA requirement was a pretext for unlawful discrimination. At oral arguments, Betts' counsel conceded that there is no evidence that the University would have applied a different standard to anybody else in the MAAP program. It follows that the University's belief that Betts was disabled was not a motivating factor in its decision to dismiss Betts.

The purpose of the "regarded as disabled" provision of the ADA is to prevent employers and public entities from making stereotypical assumptions about a person whom they regard as being disabled before allowing that person to demonstrate his or her competence. Clearly, that is not the case here. When LNEC first told the faculty committee that Betts was learning disabled, the faculty committee did not dismiss Betts from MAAP. Instead, the faculty committee allowed Betts to continue in the program and even tried to accommodate what they mistakenly thought was an actual disability under the ADA. It was only after Betts failed to achieve a GPA of 2.75 for the entire academic year that the faculty committee dismissed him from the MAAP program.

Betts argues that his "learning disability was the cause of his inability to meet the 2.75 GPA standard for the first semester and the unaccommodated portion of the second semester," and that his performance "showed he is able to attain a GPA greater than 2.75 with 'reasonable modifications to rules, policies, or practices.'" (Pl.'s Mem. in Supp. of Mot. for Summ. J.) Betts argues that the University discrimi-

nated against him by reason of his disability because the University dismissed him based on his GPA for the entire academic year, which included Betts' pre-accommodation test scores.

Betts, however, fails to recognize the difference between discrimination on the basis of an actual disability and discrimination on the basis of an unwarranted stereotypical assumption.[10] Although a defendant may violate the law by requiring a person who is *actually* disabled to meet certain objective requirements without accommodation, a defendant who regards a person as disabled does not violate the law simply by requiring him to meet the same objective requirements that everyone else must meet. It follows that since Betts did not have an actual disability under § 12102(2)(A) and since the University took no adverse action against him because it regarded him as being disabled, the University did not unlawfully discriminate against him. Although the University al-

lowed Betts the double time accommodation, the ADA did not require that the University provide Betts this accommodation.[11] Therefore, the University did not discriminate against Betts on the basis of a disability when it dismissed Betts on the basis of Betts' pre-accommodation test scores.

In the "regarded as disabled" context, Betts essentially has to show that the University dismissed him because the University regarded him as disabled. Betts cannot demonstrate this causal link. It is undisputed that the University dismissed Betts solely because of his low GPA. Clearly, Betts' poor performance was not caused by the University's belief that he was disabled. Since Betts did not have an actual disability, the University did not discriminate against him on the basis of his actual disability, and since it is undisputed that Betts was dismissed solely on the basis of failing to meet a purely objective requirement, the University did not dis-

---

**10.** In an earlier opinion, the court stated that even if the University regarded Betts as disabled under § 12102(2)(C),

> [Betts] would have to prove that he was denied admission to the medical school because the University regarded him as limited in his ability to learn in comparison to the average person in the general population. Betts reminded the court of its earlier statement:
>> As to the requirement that Plaintiff show a detriment based on his disability, in all likelihood he would be able to make such a showing on the merits. Clearly, if it is found that Plaintiff's poor performance resulted from a learning disability, he will have satisfied this criterion, since the University has admitted that Plaintiff was denied entry because of his poor performance.
> However, Betts fails to recognize that this reasoning applies to the definition of disability under § 12102(2)(A), not § 12102(2)(C). Clearly, Betts' poor performance was not caused by the University's *belief* that he was disabled. Thus, the court's holding [granting the University

summary judgment] would be the same regardless of its finding under § 12102(2)(C). *Betts v. Rector and Visitors of the University of Virginia*, 113 F.Supp.2d 970, 980 n. 10 (W.D.Va.2000) (citations omitted).

**11.** *See Weber v. Strippit, Inc.*, 186 F.3d 907, 916–17 (8th Cir.1999) (holding that "regarded as" disabled plaintiffs are not entitled to reasonable accommodation); *Workman v. Frito–Lay, Inc.*, 165 F.3d 460, 467 (6th Cir.1999) (same); *Newberry v. East Texas State University*, 161 F.3d 276, 280 (5th Cir.1998) (holding that "an employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment"); *see also Deane v. Pocono Medical Center*, 142 F.3d 138, 148 n. 12 (3d Cir.1998) (en banc) (noting that the argument that employers are not required to provide reasonable accommodation for perceived disabilities has "considerable force" but declining to rule on this issue); *but see Katz v. City Metal Co.*, 87 F.3d 26, 33 (1st Cir.1996) (finding that the ADA applies a duty to reasonably accommodate in a perceived disability case).

criminate against Betts based on its subjective belief that he was disabled. Therefore, Betts cannot establish the causation necessary for recovery under the ADA and the Rehabilitation Act.

### III.

For the reasons stated above, the court declines to decide whether the Eleventh Amendment bars Betts' claim, finds that the case is not moot and finds that Betts cannot demonstrate the necessary causation requirements under the ADA and Rehabilitation Act. Accordingly, the court will grant the University's motion for summary judgment and deny Betts' motion for summary judgment. An appropriate order will be entered this day.

### FINAL ORDER

For the reasons stated in the court's Memorandum Opinion entered this day, it is **ORDERED** and **ADJUDGED** that the Rector and Visitors of the University of Virginia's Motion for Summary Judgment is **GRANTED** and Betts' Motion for Summary Judgment is **DENIED.**